UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN JOSEPH NELSON,<br><br>Defendant. | Case No. 17-cr-00533-EMC-1<br><br>**ORDER PARTIALLY OVERRULING OBJECTIONS TO REMOTE *DAUBERT* HEARINGS**<br><br>Docket Nos. 1019, 1023, 1030 |

## I.   INTRODUCTION

Following objections to conducting remote hearings for the upcoming *Daubert* motion on the Government's enterprise expert[1] due to the current health pandemic, this Court ordered briefing on Defendants' right to be physically present during such hearings. Defendant David Salvatore Diaz objects to any form of a remote hearing; he takes the position that his physical presence at the *Daubert* hearings is constitutionally and statutorily mandatory, and he does not waive such rights. Docket No. 1019 ("Diaz Brief"). Defendant Brian Wayne Wendt joins Mr. Diaz—but Mr. Wendt waives his right to be physically present, subject to five conditions that he argues will make the remote hearings constitutional. Docket No. 1023 ("Wendt Brief").[2] A number of the remaining defendants filed joinders.[3]

---

[1] The Government has decided only to present one enterprise expert, Jeremy Scheetz.

[2] Mr. Wendt also argues that the Eighth Amendment provides a right to heightened scrutiny as to the admissibility of evidence because of the potential punishment of death. However, this argument is now moot in light of the Government's notice indicating that it will not seek the death penalty. *See* Docket No. 1065.

[3] Defendant Damien David Cesena joins the section of Mr. Diaz's brief regarding the statutorily

The Government's argues that a *Daubert* hearing does not require a defendant to be physically present under Federal Rule of Criminal Procedure 43 or the Constitution.

For the reasons explained below, the Court **OVERRULES in part** the objections to conducting a remote *Daubert* hearing because neither Rule 43 nor the Constitution mandates a defendant to be physically present.

## II.     DISCUSSION

A.     Authority Regarding Physical Presence at *Daubert* Hearings

Defendants have not cited, and this Court has not found, any authority that holds a defendant must be physically present at a *Daubert* hearing. Mr. Diaz provides the Court with two cases that have squarely addressed this issue: *State v. Allenbaugh*, 2020 WL 200810 (Ct. App. Ohio Jan. 13, 2020) and *United States v. Karmue*, 841 F.3d 24 (1st Cir. 2016). However, as Mr. Diaz's brief concedes, both cases do not support his objection.

*Allenbaugh* is distinguishable. Mr. Allenbaugh represented himself *pro per* when the trial court held his *Daubert* hearing without his presence, and denied the motion. *Allenbaugh*, 2020 WL 200810 at 2. The Ohio Court of Appeals reversed, alleging his absence from the *Daubert* hearing violated his due process rights because he had ***no*** opportunity to challenge or cross-examine the expert witness. *See id*. Here, it is undisputed that the Defendants will have an

---

and constitutional right to be present at a *Daubert* hearing. Docket No. 1024. Mr. Cesena does not join Mr. Diaz's brief that takes the position that these rights cannot be satisfied via remote hearing. *Id*. Instead, Mr. Cesena requests this Court to set the hearings on a later date when the COVID-19 pandemic is over. *Id*.

Defendant Russel Taylor Ott joins Mr. Diaz's position and does not waive his right to be physically present at the *Daubert* hearing. Docket No. 1027.

Defendant Christopher Ranieri joins Mr. Wendt's arguments. Docket No. 1025.

Defendants Raymond Foakes and Russell Lyles, Jr. join Mr. Wendt's position. Docket No. 1028.

Defendant Merl Hefferman joins both Mr. Diaz and Mr. Wendt's positions. Docket No. 1029. Mr. Hefferman expressly invokes his right to be physically present at the *Daubert* hearing. *Id*.

Defendant Jonathan Joseph Nelson joins Mr. Wendt's arguments and authorities. Docket No. 1031.

Defendant Jeremy Geer also joins Mr. Wendt's arguments. Docket No. 1032.

opportunity to vigorously cross-examine the Government's expert witness via their counsel. And as explained below, counsel will be given a chance to confer with their clients after direct and before cross-examination.

The second case, *United States v. Karmue*, expressly rejected the arguments Mr. Diaz now advances. There, the defendant was physically present for the first day of a *Daubert* hearing, but was not during the second day. *Karmue*, 841 F.3d at 26. His attorney "objected that, given Karmue's absence, the holding of the hearing would violate Karmue's Sixth Amendment rights." *Id*. The district court overruled the objection. *Id*. On appeal, Mr. Karmue reasserted his Sixth Amendment argument, but he also advocated—for the first time—that the decision to proceed with the *Daubert* hearing in his absence violated Rule 43(a)(2) and his due process rights. *Id*.

The First Circuit rejected all arguments; however, it did so under different standards of review. Because the defendant only advanced his Sixth Amendment argument at the district court, the Court of Appeals reviewed it under a *de novo* standard. The remaining arguments—*e.g.*, Rule 43 and due process—were reviewed for clear error. Regarding the Sixth Amendment's Confrontation Clause, the court noted that "the Confrontation Clause has historically applied to testimony elicited at, and evidence produced for, trial, and we have noted that the confrontation right has never been extended beyond the context of a trial." *Karmue*, 841 F.3d at 26–27 (internal quotations and citations omitted). But the court also recognized that it has "not completely foreclosed the possibility that the Confrontation Clause might apply to a pretrial hearing of some sort . . . , and we also have not previously considered the specific issue of whether a pretrial *Daubert* hearing might qualify as a hearing to which the right guaranteed by the Confrontation Clause could attach." *Id*. (citations omitted).

The *Karmue* court then stated that even assuming *arguendo* that the Confrontation Clause attaches to pretrial hearings, the defendant's challenge fails because he did not explain how his presence at the second day of the *Daubert* hearing could have revealed any error regarding the expert testimony. *Id*. at 27. The First Circuit then rejected the defendant's two constitutional arguments on this principle. As to the defendant's due process argument, the court held that "the right is infringed only if the defendant's presence would have 'contribute[d] to the fairness of the

3

procedure.'" *Id*. (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). And regarding the defendant's Confrontation Clause argument, the court held that "[i]t is not clear or obvious, however, what the benefit of Karmue's presence at the hearing would have been . . . . [H]e does not explain what assistance he could have rendered in a hearing about Reddy's credentials as an expert. Nor does Karmue make any concrete argument about how his absence on that second day of the *Daubert* hearing impeded his ability to effectively assist his lawyer in preparing for Reddy's cross-examination at trial." *Id*. at 27.

The court also rejected the defendant's challenge under Rule 43. The *Karmue* court recognized that

> The text of Rule 43(a) provides that the defendant must be present at "every trial stage." The Advisory Committee notes then explain that this rule, which "set[s] forth the necessity of the defendant's presence at arraignment and trial[,] is a restatement of existing law. ***This principle does not apply to hearings on motions made prior to or after trial***.

*Id*. at 28 (citations omitted) (emphasis added). The First Circuit held that it was not clear error under Rule 43 for the district court to conduct the second day of the *Daubert* hearing without the defendant's physical presence because two Circuits at the time held Rule 43 did not apply to similar pretrial hearings. *Id*. (citing *United States v. Burke*, 345 F.3d 416, 423–24 (6th Cir. 2003) [no right to be present at a pretrial suppression hearing]; *Taylor v. United States*, 385 F.2d 835, 836 (8th Cir. 1967) (per curiam) [no right to be present for a hearing on motions in limine]).

B.  Rule 43's Application to *Daubert* Hearings

The Court is not persuaded that a defendants' presence is mandatory by rule. Rule 43 requires physical presence of a defendant during the following: "(1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing." Fed. R. Crim. P. 43(a)(1)–(3). The rule explicitly states that "[a] defendant need ***not*** be present" for a "proceeding [that] involves only a conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3).

Mr. Diaz concedes that the First Circuit in *Karmue* rejected a similar challenge under Rule 43 and that the Sixth Circuit in *United States v. Burke*, 345 F.3d 416, 421 (6th Cir. 2003) rejected

4

the argument that Rule 43 prevents two-way video conferences for pretrial hearings.[4] But Mr. Diaz contends that there are numerous Ninth Circuit authorities that support his argument that Rule 43 provides the right to be present in such a way that is broader than constitutionally guaranteed rights. *See, e.g.*, *United States v. Martinez*, 850 F.3d 1097, 1100 (9th Cir. 2017); *United States v. Ornelas*, 828 F.3d 1018, 1021 (9th Cir. 2016); *United States v. Reyes*, 764 F.3d 1184, 1189 (9th Cir. 2014); *Olney v. United States*, 433 F.2d 161, 163 (9th Cir. 1970); *Christian v. Rhode*, 41 F.3d 461, 465 (9th Cir. 1994). However, none of these Ninth Circuit authorities specifically hold that a pretrial evidentiary hearing (such as a *Daubert* hearing) requires a defendant's physical presence under Rule 43.[5] No Defendant herein has cited any authority to the contrary.

According to Mr. Diaz, *United States v. Bordallo*, 857 F.2d 519 (9th Cir. 1988) stands for the proposition that Rule 43 may apply before the jury is impaneled—*i.e.*, before trial. While it is true that *Bordallo* concerned a proceeding that took place before the empanelment of the jury, it

---

[4] In *Burke*, a defendant appealed the denial of his motion to suppress on the grounds that he was not physically present for the hearing within the meaning of Rule 43 because the judge appeared via two-way video conference. *Burke*, 345 F.3d at 421. The court held that, by its text, Rule 43 did not apply to the defendant's suppression hearing because the rule applies at "every stage of the trial beginning with the impaneling of the jury, and it applies to only two pre-trial events—the arraignment and the plea." *Id.* (internal quotations omitted). The Sixth Circuit then relied on the Advisory Committee Notes to Rule 43, which, according to the court, made it clear that a pre-trial motion hearing is not a "stage of the trial" because "[t]he first sentence of the rule setting forth the necessity of the defendant's presence at arraignment and trial is a restatement of existing law. *Id*. And, at the time of the enactment of Rule 43, the "existing law" was that "trial" denoted the time between the impaneling of the jury and the delivery of the sentence because in *Lewis v. United States*, 146 U.S. 370 (1892), which was cited in the Note, the Supreme Court reversed a death sentence for murder where the defendant had not been allowed to be present in court during preliminary challenges to the jury. The Court relied upon and quoted from *Hopt v. Utah*, 110 U.S. 574 (1884), which rejected a government argument that the trial did not begin until the jury was sworn in, and which instead held that "where the indictment is for a felony, the trial commences at least from the time when the work of empaneling the jury begins." *Lewis*, 146 U.S. at 373–74. It reasoned that *Lewis*, which Rule 43 was built upon, supported the proposition that the "trial" begins with jury impaneling.

[5] *Cf. Martinez*, 850 F.3d at 1102 (failure to notify defendant of a juror note violated his right to be present at every state of trial); *Ornelas*, 828 F.3d at 1023 (no violation of right to be present when trial court sentenced defendant after defendant fled); *Reyes*, 764 F.3d at 1190 (harmless error for a district court to prevent a defendant from being present at sidebar regarding *voir dire*); *Olney*, 433 F.2d at 163 (holding that a motion to suppress was a "critical stage of the prosecution" but ultimately not deciding whether it was a constitutional violation.); *Rhode*, 41 F.3d at 465 (9th Cir. 1994) (pretrial deposition).

5

was not a pretrial motion. There, the Ninth Circuit reviewed the district court's *sua sponte* dismissal of a few prospective jurors without the presence of the defendant or his attorney because they were personal friends of the defendant. *Id*. at 522. After unsuccessfully moving for a mistrial, the defendant appealed and argued that Rule 43 mandated his physical presence at this jury-selection stage, which the Ninth Circuit found to be "somewhere between the ministerial stage of drawing the prospective juror pool and the formal pretrial narrowing of the pool through *voir dire* for a particular trial." *Id*. at 523. The court concluded that the defendant should have been physically present, but it was harmless error for the district court to *sua sponte* dismiss these potential jurors since they were the defendant's friends and would have been dismissed eventually. But the Ninth Circuit did not make it clear whether it reached this conclusion on Federal Rules of Criminal Procedure 24 or 43. *Id*. at 522 ("There is authority that Rule 43 requires the defendant's presence at the *voir dire* examination of prospective jurors. Clearly counsel must be present for the examination of the prospective jurors and exercise of peremptory challenges [under Rule 24].") (internal citations omitted).

Thus, to the extent that Mr. Diaz and Defendants rely on *Bordallo* as Ninth Circuit authority squarely holding that Rule 43 extends to pretrial hearings—it did not so clearly hold. Moreover, a *Daubert* hearing is very different than a process by which a judge dismisses a juror— the defendant absent from a *Daubert* hearing will still have an opportunity to confront the expert witness via counsel at that hearing and at trial if the expert is permitted to testify. In contrast, a defendant absent from the dismissal of a juror will never have an opportunity to participate in that decision.

Mr. Diaz cites *United States v. Veatch*, 674 F.2d 1217 (9th Cir. 1981) in support of his argument. In *Veatch*, the Ninth Circuit held Rule 43 did not apply to an evidentiary hearing regarding (1) defendant's competency to stand trial; (2) defendant's oral motion for permission to show good cause for the untimely filing of notice concerning reliance on an insanity defense; and (3) defendant's motion for a continuance to allow the Government adequate time to prepare to rebut the insanity defense because these were all arguments of law. Mr. Diaz's argument regarding *Veatch* is as follows: because the Ninth Circuit could have concluded that Rule 43 does

6

not extend to any pretrial hearing, it would have so held and ended its analysis; therefore, *Veatch* must have implicitly rejected this argument. Such a conclusion is speculative. A holding cannot be inferred from mere silence. Indeed, the *Veatch* court ultimately concluded that the pretrial hearing fell within Rule 43(b)(3) because all the issues concerned questions of law. *Id*. at 1226. If anything, the Government's argument that *Veatch* is analogous to the issue before this Court is persuasive. The issues before the district court in *Veatch* (*e.g.*, defendant's competency to testify and his sanity to stand trial) are at least as critical if not more so than the expert witnesses' testimony here.

In sum, Defendants have not cited any binding authority holding that Rule 43 extends to *Daubert* hearings or pretrial hearings analogous to an expert witness hearing. To the contrary, persuasive Circuit authorities exist (*e.g.*, *Burke* and *Karmue*) that expressly reject Rule 43's application to pretrial hearings beyond those enumerated in the Rule. As the Government points out, *Daubert* determinations are questions of law—not fact. *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) ("*Daubert* makes the district court a gatekeeper, not a fact finder. When credible, qualified experts disagree, a criminal defendant is entitled to have the jury, not the judge, decide whether the government has proved its case."). Defendants' presence is not mandated by Rule 43.

C.     <u>Defendants' Rights under The Fifth And Sixth Amendments</u>

As to Defendants' constitutional right to attend the *Daubert* hearing, the Supreme Court decision in *Kentucky v. Stincer*, 482 U.S. 730 (1987) provides a guidepost. There, the Supreme Court held that a defendant's physical absence from a competency hearing did not violate the Sixth Amendment or due process (under the Fourteenth Amendment). *Id*. at 744–48.

In *Stincer*, the defendant was charged with sodomy of an 8-year-old girl, a 7-year-old girl, and a 5-year-old boy in violation of Kentucky state law. *Id*. at 732. The trial court held an in-chambers competency hearing to determine whether the two young girls were able to testify. *Id*. at 732–33. This competency hearing took place ***after*** a jury was sworn, but ***before*** the presentation of evidence. *Id*. at 732. The defendant objected to his physical exclusion from the competency hearing, but the trial court overruled the objection. The trial court permitted the defendant's

7

lawyer to attend. *Id*. at 732.

During the in-chambers hearing, the trial judge, the prosecutor, and the defendant's attorney asked questions of each victim to determine if they were capable of testifying. *Id*. "The two children were not asked about the substance of the testimony they were to give at trial. The court ruled that the girls were competent to testify. [Defendant's] counsel did not object to these rulings." *Id*. At trial, "[b]efore each of the girls began her substantive testimony in open court, the prosecutor repeated some of the basic questions regarding the girl's background that had been asked at the competency hearing." *Id*. During cross-examination, defendant's counsel asked similar questions as those asked during the competency hearing. *Id*. Following the trial testimony of the victims, defense counsel did not request that the trial court reconsider its ruling that the victims were competent to testify. *Id*. The jury convicted the defendant of first-degree sodomy. *Id*.

A divided Supreme Court of Kentucky reversed. *Id*. at 735. The majority held that the defendant's exclusion from the competency hearing "denied him due process and violated his Sixth Amendment right to confront the witnesses against him." *Id*. It held that he had "an absolute right to be present at the competency hearing because the hearing 'was a crucial phase of the trial.'" *Id*. This was so, as explained by the state supreme court, because the defendant's trial "might not have taken place had the trial court determined that the children were not competent to testify." *Id*. The U.S. Supreme Court granted *certiorari* to decide "whether respondent's constitutional rights were violated by his exclusion from the competency hearing." *Id*.

The Supreme Court reversed. *Id*. at 748. It held that the defendant's right to confront the witness was not violated by his absence from the competency hearing, nor were his due process rights infringed. *Id*. at 744–48. The Court found it unnecessary to pinpoint for constitutional analysis whether the hearing constituted a pretrial or trial hearing. *Id*. at 740. It recognized that the Confrontation Clause provides only "**an opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*. (quoting *Lee v. Illinois*, 476 U.S. 530 (1986)) (emphasis in original). The Supreme Court then placed great emphasis on the fact that—despite the defendant's non-participation at the

8

competency hearing—the two witnesses testified at trial, which afforded the defendant the opportunity to cross-examine them and assist his attorney as needed. *Id*. "Any questions asked during the competency hearing, which [defendant's] counsel attended and in which he participated, could have been repeated during direct examination and cross-examination of the witnesses in [defendant's] presence." *Id*. Because of this, the Court concluded that the defendant had the opportunity for full and effective cross-examination of the two witnesses during trial; thus, his rights under the Confrontation Clause were not violated by his exclusion from the competency hearing. *Id*. at 744. *Stincer* disposes of Mr. Diaz's Sixth Amendment argument. Here, as in *Stincer*, the Defendants will be physically present at trial when Mr. Scheetz takes the stand, and Defendants will have an opportunity to cross-examine and confront Mr. Scheetz at trial.

As to the due process argument in *Stincer*, "[t]he Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Id*. at 745 (citing *Snyder v. Massachusetts*, 291 U.S. 97, 105–106 (1934)). But the Court qualified this right as not absolute: "due process clearly requires that a defendant be allowed to be present to the extent that ***a fair and just hearing would be thwarted by his absence***." *Id*. (internal quotations and citations omitted) (emphasis added). The Supreme Court concluded in that case that the defendant's due process rights were not violated by his exclusion from the competency hearing because it involved no questions related to the victims' anticipated substantive testimony at trial, the defendant could not have aided his counsel at the hearing, and he could not have gained anything from attending. *Id*. at 746; *see also Ervin v. Davis*, 150 F. Supp. 3d 1108, 1130 (N.D. Cal. 2015) (district judge's exclusion of the defendant from the initial jury selection process was not a violation of due process because the defendant "fails to establish that his absence during the screening of the jurors' questionnaires frustrated the fairness of his proceedings"); *United States v. Algere*, 457 F. Supp. 2d 695, 701 (E.D. La. 2005) (district court's appearance via video does not violate due process because '[w]hen a defendant gains the same benefit from the Court's participation by video teleconference as if he were actually present before the Court, his right to a fair hearing is not

thwarted"). The Court in *Stincer* cautioned, "although a competency hearing in which a witness is asked to discuss upcoming substantive testimony might bear a substantial relationship to a defendant's opportunity better to defend himself at trial, that kind of inquiry is not before us in this case." *Id*. at 746.

The due process claim in the case at bar presents a closer question. Here, the *Daubert* hearing challenging the qualifications of the expert's ability to opine on Hells Angels enterprise will attempt to demonstrate his personal knowledge of the Hells Angels enterprise, its history, structure, rules, conduct, etc., and he will testify as to factual, real-life examples. These are matters of which Mr. Diaz and other Defendants may have knowledge which can be of assistance to counsel on cross-examination at the *Daubert* hearing. Although Defendants will have an opportunity to cross-examine at trial, the *Daubert* hearing is significant because it could result in the exclusion of testimony potentially pivotal to the RICO claims.

To address Defendants' potential due process rights, and in response to Mr. Wendt's proposed conditions, the Court will implement a procedure wherein the Government will be required to submit Mr. Scheetz's direct testimony via a declaration/affidavit (in lieu of live testimony) in advance of the *Daubert* hearing. Defense counsel will be given time to go over that direct testimony with each Defendant and prepare for cross-examination. Defendants and counsel will be given a similar opportunity after redirect.[6] In this way, Defendants will be afforded an effectively full opportunity to participate in the *Daubert* hearing of Mr. Scheetz.

### III.   CONCLUSION

As indicated at the June 23, 2020 status conference and the minutes thereafter, the Court will move forward with a fully or partially remote *Daubert* hearing on Tuesdays, which will provide as much as practicable an opportunity for real time participation for both out-of-custody

---

[6] Mr. Diaz does not advance much argument regarding the right to effective assistance of counsel under the Sixth Amendment. In any event, this argument is also rejected for the same reasons—all Defendants will be represented at trial by counsel during expert-witness testimony. Additionally, Mr. Wendt cites to *United States v. Hebshie*, 754 F. Supp. 2d 89 (D. Mass. 2010) in support of his argument that defendants have an interest in ensuring the admissibility of the expert testimony. But this case seems wholly misplaced. It pertains to a habeas petition where the district court found the petitioner's ineffective assistance of counsel claim meritorious because his lawyer at trial completely failed to move for a *Daubert* hearing. *Id*. at 113.

and in-custody defendants to participate by video and/or audio conferencing if not by physical in-court appearance.

- The Government must file Mr. Scheetz's direct testimony in the form of affidavit by **June 29, 2020**. The affidavit must contain ***all*** bases for Mr. Scheetz's expert-witness proffer; any bases withheld from direct testimony will be subject to exclusion;

- Defendants will be afforded an opportunity to review the direct testimony with their counsel and co-defendants/counsel in a manner that permits confidential discussions and adequate time to prepare for cross-examination;

- Parties will appear via Zoom on the following dates for cross-examination and, if necessary, re-direct and re-cross: **August 18, 2020, August 25, 2020, August 28, 2020,[7] and September 1, 2020**. These hearings shall begin at 9:00 a.m. and continue until 12:00 p.m. Such dates are deliberately spaced out in order to provide defense counsel adequate opportunity to regroup with their clients and/or co-defense counsel. Defendants may appear remotely. Counsel for Defendants shall explore the availability, if any, of a direct line of communication between counsel and client during the hearing.

This order disposes of Docket Nos. 1019, 1023, and 1030.

**IT IS SO ORDERED**.

Dated: July 7, 2020

_____
EDWARD M. CHEN
United States District Judge

---

[7] During the June 23, 2020 status conference, the Court and the parties discussed August 28, 2020 from 1:00 p.m. to 4:00 p.m. as an additional date for the *Daubert* hearing. Because this date falls on a Friday, the Court was unaware of Santa Rita Jail's availability for video conferencing, which is typically only available on weekends. The Court has learned that August 28, 2020 has one slot—*i.e.*, availability for one in-custody defendant to participate remotely. In order to ensure that the *Daubert* hearing is completed, the Court has reserved August 28, 2020 as an additional date.

11