James A. Bustamante
CA SBN 133675
1000 Brannan Street, Suite 488
San Francisco, CA 94103
T: 415-394-3800
F: 415-522-1506
james@jacksonsquarelaw.com

Attorney for Defendant
MERL HEFFERMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MERL FREDERICK HEFFERMAN<br><br>　　　　　Defendant | Case No.: 17-CR-00533-EMC<br><br>**MERL HEFFERMAN'S SENTENCING MEMORANDUM**<br><br>Date: October 19, 2023<br>Time: 10:30 AM<br>Honorable Judge Edward Chen |

## I. INTRODUCTION

On September 11, 2018, in the Northern District of California, Mr. Hefferman, along with ten other defendants, was charged in a 12-count Superseding Indictment. Mr. Hefferman was only named in Count 12 and was not charged in the remaining underlying counts.

Mr. Hefferman was arrested on September 14, 2018, in the Eastern District of California. He was released on bond with U.S. Pretrial Services supervision on October 23, 2018. Mr. Hefferman has complied with all court-ordered conditions of his release and has never been in violation of the conditions of his supervision during the nearly five years he has been supervised.

On December 21, 2022, Mr. Hefferman pled guilty to Count 12 of the Superseding Indictment. Pursuant to a written Plea Agreement, Mr. Hefferman agreed to the elements of the offense, to an expanded search condition as part of supervised release, and to the forfeiture of property. The parties did not agree to an offense level calculation; however, the government agreed to recommend a custodial sentence of between 70 and 87 months. The defendant is not bound to request a sentence within the guideline range and can ask for a variance below the range.

Mr. Hefferman agrees with the U.S. Probation Office's assessment that a downward variance is warranted; however, Mr. Hefferman contends that a custodial sentence of 30 months more accurately considers all of the mitigating factors in this case.

The requested sentence of **30 months** custody is reasonable and just under the circumstances present here including consideration of Title 18 USC § 3553(a) factors and the

identified sentencing goals, including, punishment, deterrence, protection of the public and rehabilitation.

## II.     SOCIAL HISTORY

Mr. Hefferman was born on March 4, 1969, in Wheeling, West Virginia, to Merl Frederick Hefferman, Sr. and Betty Ann Brock. He was the only child born to his parents' relationship; however, he has four half-siblings.

Mr. Hefferman had a tumultuous and violent upbringing. When he was six months old, his father threw him out of a second-story window and then down two flights of stairs. As a result, one of Mr. Hefferman's kidneys ruptured and had to be removed. Mr. Hefferman's mother became romantically involved with her husband's best friend and when Mr. Hefferman was approximately six years old, his mother and his father's best friend threw his father out of a moving car and his mother ran over his father's legs.

Mr. Hefferman's mother ultimately married her husband's best friend, Bob Biles, who was a heroin addict and physically abusive to Mr. Hefferman and his mother. His stepfather beat him with a belt or wooden paddle and sometimes punched him in the face. When Mr. Hefferman was seven years old, he came home from school to find his stepfather dragging his mother around the house by her hair. His stepfather then pulled out a gun and shot at Mr. Hefferman four times. As a result of this incident, Mr. Hefferman packed up his belongings, including a sleeping bag, and left home.

For three or four years, Mr. Hefferman lived at the Poverello House, a shelter in downtown Fresno. He was sent back to his mother's home several times, but he continued to run

3

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

away and stay at the shelter as he no longer wanted to endure the abuse from his stepfather. Mr. Hefferman ultimately went to live with his maternal grandparents where he remained until he was 16 years old.

The abuse suffered and the experience of being homeless at such a young age were traumatic for Mr. Hefferman. He recalled being fearful as a child on the streets of downtown Fresno and encountered numerous men trying to sexually assault him.

Mr. Hefferman has been married to Stephanie Cantwell Hefferman for the past ten years. They have no children together; however, each of them has two children from prior relationships. Mr. Hefferman is close with both of his stepchildren. His stepson, Jerald James (JJ) Williams, age 27, died in his sleep from unknown causes on July 13, 2023. The loss of JJ has been devastating for both Mr. Hefferman and his wife. Ms. Hefferman was diagnosed with lymphoma three years ago and recently finished chemotherapy but will be resuming radiation therapy in two months.

Mr. Hefferman graduated from high school in 1988 and has always maintained steady employment. He currently works as a superintendent at an electric and solar company in Clovis, California. However, his current health issues have not allowed him to work every day over the last few months.

Mr. Hefferman has suffered from a myriad of health problems since 2017. In 2017 he had surgery for an umbilical hernia which left him in a coma and on life support for nearly a month. He had additional surgeries in 2017 and 2018 pertaining to his hernia. In May 2023, he again underwent surgeries on his abdomen and hernia which resulted in weekly home care visits for

4

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

treatment, cleaning, and redressing the infected area. Mr. Hefferman's hernia complications have involved infections of the mesh and septic shock. In addition to his hernia issues, Mr. Hefferman suffers from obesity, high blood pressure, and type 2 diabetes with hyperglycemia.

One of the most important parts of Mr. Hefferman's life is being able to serve his community. When Mr. Hefferman was a young boy at Poverello House, Mike McGarvin, the shelter's founder, also known as "Papa Mike," made an impression upon him. For the first time in Mr. Hefferman's childhood he was shown kindness and compassion. It was that kindness and compassion that motivated Mr. Hefferman to find a way to "give back" and find a way to do something positive in his community. For the past 25 years, Mr. Hefferman has held an annual toy and bicycle drive every December. In one of the recent years, the drive resulted in more than 4,000 bicycles being donated. This bicycle donation drive takes months to prepare and currently involves contributions from several businesses and organizations. This commitment for the last 25 years epitomizes Mr. Hefferman's connection to those kids less fortunate than others who need love and support that he was denied during his adolescent years.

## III.   CHARACTER LETTERS

Mr. Hefferman has submitted numerous character reference letters. Exhibit A. Portions of the letters are set out below.

**James Hefferman (brother)**

> Merl is a great brother, husband, father, grandfather, friend, Co-worker, and community supporter. Ask anyone that knows him and I'm sure they would say the exact same thing!
>
> Coming from a broken home as a child and living on the streets just trying to survive to having a loving family, a successful job, and many great friends, who he would give the

5

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

shirt off his back for, is a example of the kind of man he is and the character that he shows.

**Michael Thompson (friend)**

As a community leader, Merl has spearheaded the annual bicycle giveaway held in Downtown Fresno at Chukchansi Park. I have personally witnessed his commitment as he tirelessly coordinates start to finish the purchase, assembly, and logistics, of this beautiful charity event. I have helped him with the unloading of semi-trucks and the careful arrangement of over 3000 bicycles on the field, to the early hours of the morning, all in preparation for the event. This bicycle giveaway serves as a heartwarming reminder of Merl's dedication to the betterment of the community and the lives of underprivileged children.

**Michael Vigil (friend)**

From my perspective, Merl epitomizes qualities such as integrity, intelligence, and responsibility. His consistent display of care and a family-oriented attitude creates an atmosphere of harmony and unity around him. Merl's robust work ethic is evident in his dedicated job performance and organizational aptitude, as well as his remarkable efforts in organizing bicycle charity giveaways for underprivileged children within his community.

**Rhonda Murphy (friend)**

Merl has helped so many children in the Central Valley; I don't think he even realizes the impact he has created. I consider Merl my friend, he has demonstrated what it means to have good character and being a kind man.

**Tim Patendis (friend)**

I have the upmost respect and appreciation for Merl, he has a big heart and loves children, and for any one person to dedicate so much time and effort to change the lives of children in a positive way is a very special person. Through his incredible generosity thousands of children have a special Christmas and are inspired and loved. The world needs more of this, especially our children knowing there are people who love them, and they are all special.

**Brice M. Watteron (friend/colleague)**

I have had the chance to get to know Merl, and I say without a doubt that you are dealing with a person of very good moral character. Merl operates with integrity, is responsible,

loyal, and never has a bad thing to say about anyone. Merl is also hard working and dedicated, and never leaves a job unfinished.

**Dr. Frederick Kruger (long-term doctor)**

Over the years, Merl started a bicycle drive for poor children. He would get donations throughout the community and purchase bicycles for underprivileged children. He has been doing this for as long as I can remember. In recent years, he began working for an electrical company. If either myself, or my family members ever needed electrical work, Merl was always there to help. He always made sure the job was done in a timely manner and at a fair price.

Over the last forty years that I have been practicing medicine in Fresno, I cannot recall a kinder, sweeter, more caring individual than Merl Hefferman. I feel that if there were more Merl Heffermans in this world, the world would be a much better place.

**Mark Worthington (supervisor)**

Merl has been very professional, dependable, honest, and responsible. He often volunteers to organize company events and community events and always ensures they are successful. His friendly and cheerful nature and positive attitude have earned him a special place among his colleagues.

Above all his professional qualities, the thing that I admire the most in Merl, is that he is a good human being.

**Nathan Meredith (colleague)**

Merl can complete complex tasks quickly and efficiently in a matter-of-fact manner and with a good attitude. He has an insightful way of managing the shop and anticipates the needs of the foreman at Valley Unique, making our jobs flow smoothly and leading to employment satisfaction. Merl can be tasked with something at the 11th hour and will take it on with a yes-sir attitude. Furthermore, he has shown nothing but improvement at his job since I met him, making him an asset to the shop and a pleasure to work with.

**Zach Ragan (colleague)**

Every year beginning in early November he begins planning a large toy drive for the underprivileged kids in our area. He personally goes around and raises many donations all over Fresno and the surrounding cities. Then on Black Friday they go shopping and fill up multiple semi-trailers with bikes, toys, and clothing. To keep track of hundreds if not thousands of donations as well as travel to multiple stores to do the shopping takes a great deal of planning and ingenuity. They then rally up hundreds of volunteers to assemble all the bikes and toys to get them ready to give away. Next is where his

generosity shines. They pack the local baseball stadium with all the items and allow children to come and pick up their items which often is the only Christmas Gift they will receive. Having witnessed this I believe that Merl takes a picture with or hugs every single child that comes to this event.

**Dr. Shawn Beaty (pastor)**

I met Merl Hefferman in September of 2020 when he showed I met Merl Hefferman in September of 2020 when he showed up at our church to help serve families displaced by the Creek fire. I have since then served as his pastor and friend. Over the last three years, Merl has been an occasional attendee of the church. We have shared meals and gone on motorcycle rides together. I have also personally partnered with him over the last three years in an annual children's bike giveaway that he organizes. In recent history, I have given him pastoral counseling for his son's death, performed the memorial for the family, and visited him in the hospital. I have observed him on several occasions interact with strangers in the community and his immediate family.

When serving at the church during the Creek fire evacuation, Merl spent countless hours driving a forklift, moving pallets of water, and delivering food to people with a smile. The Bike giveaway is driven mostly by him, and I watched him collect and deliver thousands of bikes to children in the valley. In my experience with Merl, I have only seen him to be a kind and generous person.

## IV. THE OFFENSE

Mr. Hefferman is a member of the Fresno chapter of the Hells Angles Motorcycle Club (HAMC). Prior to June 15, 2014, he had a relationship with the employees of the Yost and Webb Funeral Home and their associated crematory facility in Fresno. On June 15, 2014, Sonoma chapter HAMC member Joel Silva died. On June 16, 2014, Mr. Hefferman helped facilitate the illegal cremation of Silva's body at the Yost and Webb crematory.

Because of the history of law enforcement action against the members of HAMC, it was reasonably foreseeable to Mr. Hefferman that law enforcement would investigate the disappearance of Joel Silva, including through the use of a federal Grand Jury. He helped facilitate the cremation of Silva's body with the purpose of eliminating evidence of Silva's death

8

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

so that such evidence could not be used in any possible federal Grand Jury investigation. Mr. Hefferman knew that his actions were illegal.[1]

## V.     SENTENCING CALCULATIONS

Mr. Hefferman agrees with the calculations of his offense level in the Presentence Report (PSR), which are calculated as follows:

Base Offense Level (§2J1.2):                30

Adjustment for Acceptance (§3E1.1):         -3

Total Offense Level:                        27

As Mr. Hefferman has no criminal convictions, his total criminal history score is zero, resulting in a Criminal History Category I. Not only does Mr. Hefferman have no prior criminal convictions, he has also never been arrested. This guideline calculation results in a range of 70 – 87 months. The Probation Officer recommends 55 months custodial time.

Effective November 1, 2023, the U.S. Sentencing Commission has proposed a new adjustment to the guidelines which allows for an additional two-level reduction (pursuant to USSG §4C1.1) for defendants with a criminal history score of zero, who also meet the following criteria:

- The defendant did not receive and adjustment under §3A1.4 (Terrorism);

---

[1] Mr. Hefferman's Factual Basis, included in the Plea Agreement (DOC 3068, Paragraph 2).

9

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

- The defendant did not use violence or credible threats of violence in connection with the offense;
- The offense did not result in death or serious bodily injury;
- The offense is not a sex offense;
- The defendant did not personal cause substantial financial hardship;
- The defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another person to do so) in connection with the offense;
- The offense is not covered by §2H1.1 (Offenders Involving Individual Rights);
- The defendant did not receive an adjustment under §3A11 (Hate Crime Motivation or Vulnerable Victim).

While this new guideline section is not in effect for three weeks, the Court can consider it in determining Mr. Hefferman's sentence. If this guideline were currently in effect, Mr. Hefferman's calculations would be as follows:

| | |
|---|---|
| Base Offense Level (§2J1.2): | 30 |
| Adjustment for Acceptance (§3E1.1): | -3 |
| Reduction for CH (§4C1.1) | -2 |
| Total Offense Level: | 25 |

Based on a Total Offense Level of 25 and a Criminal History Category of I, the guideline range would be 57 to 71 months.

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

## VI. SENTENCING LAW

*United States v. Booker*, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), changed sentencing in the Federal Courts. **Booker** renders the Guidelines as advisory only and instructs the sentencing courts to consider the Guidelines in the context of all of those facts enumerated in Title 18 USC Section 3553(a). Section 3553(a) remains in effect and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in "determining whether a sentence in unreasonable." **Booker**, at 660-661.

The task at sentencing is to seek a reasonable sentencing that is sufficient, but not greater than necessary to accomplish the goals of 3553. *United States v. Ressam*, 629 F.3d 793, 828 (9th Cir. 2012) (en banc), defined "substantive reasonableness:"

> "A substantively reasonable sentence is one that is sufficient, but not greater than necessary to accomplish §3553(a)(2)'s sentencing goals. The touchstones of 'reasonableness' is whether the record in 18 USC §3553(a). In determining substantive reasonableness, we are to consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range."

The Court must now consider 18 USC 3553(a) in its entirety to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set for in paragraph (2) of this subsection." The Court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –

   a. To reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

11

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

    b.   To afford adequate deterrence to criminal conduct;

    c.   To protect the public from further crimes of the defendant; and

    d.   To provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Finally, the Supreme Court has cautioned that respect for the law is promoted in many ways, not always measured by the strictness of sentenced or the nature of harsh sanctions. The court stated:

> ". . . Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." ***Gall v. United States***, 128 S.Ct. 586, 599, 1696 L.Ed. 2d 445 (2007).

## VII.  ANALYSIS OF SENTENCING FACTORS

In recommending a below-guideline sentence of 55 months, a 15-month departure from the low-end of the guideline range, the probation officer considered that the defendant had never been incarcerated and that he suffered "from numerous health conditions." However, factors not considered by the probation officer include the following:

1. The anticipated guideline amendment which provides for a two-level reduction in the Offense Level if a defendant has a criminal history score of zero;
2. Mr. Hefferman's traumatic upbringing;
3. Mr. Hefferman's performance on U.S. Pretrial Services' supervision/post-offense rehabilitation; and

12

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

4.  Mr. Hefferman's charitable contributions to his community.

Mr. Hefferman's lack of any criminal record is discussed above – he not only has never been convicted prior to his involvement in the instant case, he has never sustained an arrest. The U.S. Sentencing Commission intends to make a distinction between a defendant with criminal history points as opposed to a defendant who has none. While USSG §4C1.1 is not yet in effect, Mr. Hefferman should benefit from the Commission's intention to add this section to the guidelines.

Mr. Hefferman left home at the age of eight because his stepfather repeatedly inflicted violence on him and his mother. The last straw was when Mr. Hefferman came home from school and his stepfather shot a gun at him four times. In addition to the violence from his stepfather, Mr. Hefferman was thrown out of a second-story window and down two flights of stairs by his biological father when he was six-months old causing him to lose one of his kidneys. Mr. Hefferman's Adverse Childhood Experiences (ACEs) score was 8 out of 10 (PSR, ¶96), which means he suffered from several traumatic events prior to age 18. While defendants before this Court have often been exposed to high levels of trauma, the level of trauma experienced by Mr. Hefferman at such a young age appears to be exceptional.

Mr. Hefferman has been on U.S. Pretrial Services' supervision for nearly five years, since October 23, 2018. During that time, he has reported to his officer as required, maintained employment, and not sustained any law enforcement contacts. Mr. Hefferman's ability to follow his pretrial officer's directives demonstrates his post-offense rehabilitation as well as providing an indicator that he will be successful on supervised release once he has served his prison term.

All indications point to Mr. Hefferman adjusting and performing well while incarcerated and continuing to grow to be a productive member of society.

Despite his difficult upbringing, Mr. Hefferman has a big heart. The difficulties he faced in his childhood coupled with the kindness and compassion shown to him by "Papa Mike" resulted in him wanting to provide for the children in his community. His desire to provide toys for children in need during the holidays has resulted in a large-scale community event that provides bicycles for thousands of children in his community for the last 25 years.

These additional mitigating factors, which were not cited by the probation officer in her recommendation to the Court, appear to warrant a sentence less than the 55-month sentence recommended by the probation officer.

**VIII.   Unsupported Allegations**

Mr. Hefferman strenuously objects to the sentence, "In fact, Phipps testified that in addition to the conduct above, he incinerated a total of four bodies at Hefferman's direction" (¶56, PSR). In addition, Mr. Hefferman objects to the Government's continued attempts to extend the scope of the punishment for Count 12 by alleging the disappearance of three other HAMC members. The efforts by the Government are misplaced by attempting to utilize DOC 3600 sealed exhibits 2, 3, 4, 6 of their sentencing memorandum. With regard to the Government's sealed Exhibit 6, that information is of a CHS who is not identified by the Government and therefore not subjected to vetting, investigation and critical analysis of an uncorroborated theory. Government Sealed Exhibit 2 is addressed herein as untested, not corroborated, and insufficiently reliable to be considered by this Court. The additional exhibits do nothing to advance the Government's

expansive view of enhanced punishment for Mr. Hefferman by this Court. The bottom line is if it is information not credible or sufficient to indict by way of grand jury, then it is not sufficiently reliable to consider for sentencing. The Government is stretching credulity to advance their desire to support a sentence of 87 months. Unfortunately, the requirements of sufficiently reliable evidence precludes their desire for that sentence. The Government failed to provide the Court with the transcript of the multiday interrogation of Phipps wherein he denies illegal cremations no less than 77 times. The following was also included in Mr. Hefferman's objections to the final PSR:

- Mr. Hefferman has not been charged with any subsequent activity related to the alleged disappearances of the three other Hells Angels members Robbie Huff, Art Carasis, and Juan Guevara. Despite ample opportunities to do so, it is clear that the Government did not find Phipps credible enough to seek additional charges by way of the grand jury or for inclusion in the conspiracy charge.

- Most importantly, it is absolutely incorrect to suggest that Mr. Phipps testified in trial to that effect. Neither in trial group one nor trial group two did Mr. Phipps testify about any activity other than the illegal cremation on July 16, 2014. Any transcripts provided to probation were of Mr. Phipps' interrogation by the FBI over three days, July 18, 19, and 20 of 2018; and the grand jury transcript. (DOC 3600, Exhibit 2). It was not trial testimony subject to any challenges and cross examination by defense counsel in trial groups one or two. It should be noted that the grandy jury testimony was not subject to any challenges by defense counsel in a court proceeding wherein the witness could be cross-examined regarding the other unsupported allegations.

- Phipps had attempted to pass an FBI polygraph examination regarding his multiday interview, but failed miserably.

- In addition, he was not subjected to any additional polygraph examinations after his first failure and, more importantly, after his polygraph he ended his interrogation by stating, "I'll make something up, if you need to get them, do it."

- During Phipps' interview on 7/18/2018, he stated, "I like still drunk from last night."

- Mr. Phipps also describes himself as a blackout drunk in the 7/18/2018 interview.

- He added, "I'm an alcoholic. I get shitfaced and I don't remember."

- The uncredible and untested theory that more was done by Mr. Phipps and Mr. Hefferman related to the other three alleged disappearances is prejudicial and not relevant because it is not true. In fact, the court ordered that the allegations could not be included in trial group one or two. The information collected by the Government, spurious as it is, certainly does not rise to the level of information that has sufficient indicia of reliability and therefore should not be included. "Unreliable allegations shall not be considered." (Emphasis added). US v. Ortiz, 993 F.2d 204 at 207.

- Mr. Phipps' challenged history in his community; his offer to give the FBI agent as many bodies as needed; and his inability to provide sufficient corroboration do not support the conclusion that this is credible conduct that can be used in Mr. Hefferman's PSR or considered by this Court for sentencing.

- Hefferman was not charged with a RICO or conspiracy to murder count, and therefore relevant conduct as it relates to reasonably foreseeable related acts does not apply to my client who was only charged with obstruction of justice after the fact. The application of guideline section 1B1.3 (relevant conduct) does not apply to these circumstances.

- It appears that the Government felt that the allegations regarding the alleged illegal cremation of the three other parties were insufficient to even bring before a grand jury for purposes of indictment. In the alternative, if it was brought before the grand jury for indictment on the other three disappearances in 2018, it was declined because Mr. Hefferman was not charged. The Government declined to answer which of the two above occurred when asked.

## IX. Conclusion

Mr. Hefferman is one of 12 defendants charged as part of a multi-count RICO indictment. However, it is important to distinguish him from the other defendants charged. He did not participate in any of the RICO counts, and he was not part of the larger enterprise laid out in the Superseding Indictment. Mr. Hefferman's involvement is limited to an Obstruction of Justice charge and his sentence should reflect the narrow scope of his involvement, especially in

comparison of the sentences imposed on those defendants who were involved in the RICO counts.

The Probation Office appropriately noted that a lesser sentence was warranted for Mr. Hefferman based on his health challenges; however, the Probation Office didn't consider the totality of Mr. Hefferman's mitigation. Mr. Hefferman had an upbringing that was fraught with violence and neglect – the injuries inflicted on him by his father caused the loss of one of his kidneys and his stepfather fired four shots at him when he was in elementary school. While this Court has seen many defendants with difficult backgrounds, Mr. Hefferman's likely stands out because the level of violence directed at Mr. Hefferman at such a young age is beyond comparison. Additionally, the instant offense happened nine years ago, and Mr. Hefferman has been actively supervised on pretrial release for more than five years, demonstrating that he has no intention of engaging in future criminal behavior. Finally, Mr. Hefferman took the experiences of his youth and found a way to serve the children of his community. He knows what it is like to go without as a child and he has committed himself to making a difference by providing bicycles to thousands of children at Christmas time.

Mr. Hefferman has never been to prison; a 30-month sentence will provide adequate punishment. Mr. Hefferman's wife recently underwent cancer treatment, and they recently experienced the death of their son. Mr. Hefferman is very remorseful for his participation and has lead an exemplary life for the last five years. He wishes to put the circumstances that bring him before the Court for sentencing behind him, and move forward to become a productive member of society. He wants nothing more than to serve his custodial time, continue to improve

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM

himself, and get back to his family. In serving a custody sentence, Mr. Hefferman will not be available to care for his wife or be a source of comfort as they each continue to cope with the loss of their son.

**DATED:** October 13, 2023                                               Submitted Respectfully,

                                                                          _____
                                                                          JAMES BUSTAMANTE
                                                                          Attorney for Merl Hefferman

DEFENDANT HEFFERMAN'S SENTENCING MEMORANDUM